IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CONVATEC, INC.,

        Plaintiff,

v.

HR PHARMACEUTICALS, INC.
d/b/a HR HEALTHCARE,

        Defendant.

Case No. _____

**Jury Trial Demanded**

## COMPLAINT

Plaintiff Convatec, Inc. ("Convatec"), alleges as follows in its Complaint against Defendant HR Pharmaceuticals, Inc. d/b/a HR HealthCare ("HRH"):

### NATURE OF ACTION

1.    This is an action for infringement of United States Patent Nos. 10,293,136 ("the '136 Patent") and 10,589,061 ("the '061 Patent") (collectively, the "Asserted Patents") under the Patent Act, 35 U.S.C. § 271, based on Defendant's unauthorized manufacture, use, offer for sale, and/or sale in the United States, and/or importation into the United States, of at least HRH's TruCath® Intermittent Catheters (the "Accused Products") and acts that have induced the use, sale, and/or manufacturing of the Accused Products.

## THE PARTIES

2.      Convatec is a Delaware corporation having a principal place of business at 200 Crossing Boulevard, Suite 101, Bridgewater, New Jersey 08807.

3.      Upon information and belief, HR Pharmaceuticals, Inc., d/b/a HR HealthCare, is a corporation organized under the laws of the State of Delaware and with a principal place of business at 2600 Eastern Blvd. Suite 201, York, Pennsylvania 17402.

## JURISDICTION

4.      This Court has original subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338 as it involves a federal question relating to patents.

5.      This Court also has supplemental jurisdiction over Convatec's state law and common law claims under 28 USC §1367(a), as they arise from the same transactions and occurrences as Convatec's patent infringement claims.

6.      This Court has personal jurisdiction over HRH because HRH regularly conducts business in the State of Delaware by designing, importing, manufacturing, distributing, and/or selling the Accused Products throughout this District. This Court also has personal jurisdiction over HRH because, among other things, HRH is a Delaware corporation that, having availed itself of Delaware's corporate laws, is subject to personal jurisdiction in Delaware.

## VENUE

7.     Venue within this District is appropriate pursuant to 28 U.S.C. §§ 1391(b) and 1400(b) because HRH is organized and exists under the laws of the State of Delaware. Moreover, a substantial part of the events and omissions giving rise to the claims at issue occurred in this District, including the designing, importing, manufacturing, distributing, and/or selling of the Accused Products within and from this District.

## THE ASSERTED PATENTS

8.     On May 21, 2019, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '136 Patent, which is entitled "Efficiently Packaged Ready to use Intermittent Urinary Catheter." A true and correct copy of the '136 Patent is attached as Exhibit A.

9.     On March 17, 2020, the USPTO duly and legally issued the '061 Patent, which is entitled "Packaged Precision-Lubricated Ready-to-Use Intermittent Urinary Catheter." A true and correct copy of the '061 Patent is attached as Exhibit B.

10.     Convatec is the owner of all right, title and interest in the Asserted Patents, including the right to bring suit for infringement, by virtue of an Assignment executed on June 26, 2024. Convatec recorded this Assignment with the U.S. Patent and Trademark Office on August 8, 2024, at Reel 068223, frame 0720.

11.     As described in more detail below, the claims of the Asserted Patents are valid and enforceable for being directed to inventive devices, systems, functionality, methods, and/or designs that embody specific improvements over the prior art. The claimed devices, systems, functionality, methods and/or designs are neither abstract nor routine, and are non-obvious and unconventional.

## BACKGROUND

12.     Convatec is a global medical products and technologies company focused on solutions for the management of chronic conditions and holds leading market positions in advanced wound care, ostomy care, continence care and infusion care.

13.     In an effort to further expand its continence care division, Convatec acquired Cure Medical, LLC and the Asserted Patents in 2021, which cover an innovative product line of ready-for-use and pre-lubricated intermittent urinary catheters for patients suffering from urinary incontinence (i.e., the "Covered Products"). Since being founded in 2007, Cure Medical has made significant investments in the engineering, design, and development of the Covered Products, including seeking patent protection for such products.

## HRH'S INFRINGEMENT OF THE ASSERTED PATENTS

14.    HRH is familiar with both Cure Medical and Convatec, as a longtime supplier of lubricant for Cure Medical catheter products and current supplier of lubricant to Convatec.

15.    Through this supplier relationship, HRH has not only become familiar with Convatec's catheter products but has also gained knowledge of the manufacturer that fabricates these catheters, including the Covered Products. HRH even ships and supplies lubricant directly to this manufacturer for use and packaging with various Cure Medical/Convatec catheter products.

16.    While being a supplier for Convatec, HRH began manufacturing and, from its website, offering for sale, selling, and featuring intermittent urinary catheters and the Accused Products.

17.    Upon information and belief, HRH is also using Convatec's vendors and suppliers for the Covered Products to manufacture the Accused Products. HRH contacted the Convatec supplier that provides the form, fill, vacuum, and seal machine used to package the Covered Products and specifically requested that the exact same machine be used for packaging the Accused Products.

18.    Upon further information and belief, HRH also contacted the supplier that provides the packaging film used to seal the Covered Products and specifically requested that the same packaging film be used to seal its Accused Products.

19.    HRH has now willfully and intentionally taken advantage of the knowledge it gained through its business relationship with Cure Medical and Convatec by unlawfully manufacturing, importing, selling and offering to sell the Accused Products.

20.    HRH has, and all relevant times had, both constructive and actual knowledge of the Asserted Patents. On September 13, 2023, Convatec sent a letter to HRH providing actual notice of the Asserted Patents. Convatec also notified HRH of the Asserted Patents on December 12, 2023, and again on September 27, 2024 (collectively, "Notice Letters").

21.    HRH admitted intentional infringement to Convatec at a face-to-face meeting in Las Vegas, Nevada. At this meeting, HRH admitted that they became aware of the Asserted Patents during the final stages of designing the Accused Products.

22.    As further explained below, HRH continues its infringement of the Asserted Patents by manufacturing, importing, selling and offering to sell the Accused Products, despite knowing of their infringement of the Asserted Patents. For example, HRH owns and operates the website https://hrurological.com. Through the "Products" section of HRH's website, HRH has and continues to market, offer for sale, and sell the Accused Products. A true and correct printout from HRH's

website on November 4, 2024 showing the Accused Products at https://hrurological.com/ready-to-use-catheters/ is attached as Exhibit C.

23.    HRH has also induced infringement of the Asserted Patents by encouraging third parties to sell and offer to sell the Accused Products. For example, on information and belief, HRH has authorized the Accused Products to be sold on third-party medical supplier websites, such as Byram Healthcare, as depicted at https://www.byramhealthcare.com/product-and-services/catalog/urology/product/81979-trucath-swiftt-pre-lubricated-intermittent-catheter-8fr-16-length-truprotectr-grip. A true and correct printout from Byram Healthcare's website on October 16, 2024, showing the Accused Products being offered for sale is attached as Exhibit D.

## COUNT I
**(DIRECT AND INDIRECT INFRINGEMENT OF THE '136 PATENT)**

24.    Convatec incorporates by reference the allegations contained in the above paragraphs as if set forth fully herein.

25.    Convatec, as the assignee of the '136 Patent, has the legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

26.    Being duly issued in full compliance with Title 35 of the United States Code, the '136 Patent is valid and enforceable.

27.    HRH has infringed and continues to infringe directly and indirectly, literally and/or under the doctrine of equivalents, one or more claims of the '136

Patent. HRH is making, using, offering to sell, selling, and/or importing the Accused Products into the United States without authority.

28.    HRH has also actively induced infringement of the '136 Patent, and continues to induce infringement, at least by encouraging distributors to sell and offer to sell the Accused Products with knowledge of the '136 Patent, with knowledge that the Accused Products directly infringe the '136 Patent, and without authority.

29.    Claim 1 of the '136 Patent recites:

A hermetically packaged intermittent urinary catheter, consisting essentially of: an intermittent urinary catheter having a longitudinal axial length with a first portion terminating at an insertion end and a second portion longitudinally opposed to the first portion terminating at a fixture end, and a top view profile, the catheter hermetically packaged between laminated first and second layers of film hermetically sealing the catheter within a lubricant containing retention chamber having a top view profile conforming to the top view profile of the catheter, wherein the lubricant is positioned and arranged within the retention chamber for lubricating contact with only the first portion of the packaged catheter.

30.    HRH's Accused Products are intermittent urinary catheters having a longitudinal axial length with a first portion terminating at an insertion end and a second portion longitudinally opposed to the first portion terminating at a fixture end. As depicted in the following photographs of the Accused Products, the catheters also have a top view profile. (*See also* Exhibit C; https://hrurological.com/ready-to-use-catheters/).



31.    The catheters are hermetically packaged between laminated first and second layers of film and within a lubricant containing retention chamber. The retention chamber has a top view profile that conforms to the top view profile of the catheter.



32.    The lubricant is positioned and arranged within the retention chamber for lubricating contact with only the first portion of the packaged catheter.





33.     Based on the facts set forth above, as well as in light of HRH's knowledge of the '136 Patent through the Notice Letters and from face-to-face conversations, HRH's conduct has been willful, wanton, deliberate and objectively reckless, such that Convatec is entitled to treble damages under 35 U.S.C. § 284.

34.     Based on the facts set forth above, at least in light of the Notice Letters, Convatec is entitled to pre-suit damages under 35 U.S.C. § 286.

35.     As a result of HRH's infringement of the '136 Patent, HRH caused and will continue to cause Convatec monetary damages, including but not limited to, reasonable royalties, lost sales and sales opportunities, and/or price erosion.

36.     HRH has also irreparably harmed Convatec. Unless and until enjoined by this Court, HRH will continue such acts of infringement, causing Convatec to incur substantial and irreparable harm for which it has no adequate remedy at law.

## COUNT II
## (INDIRECT INFRINGEMENT OF THE '061 PATENT)

37.     Convatec incorporates by reference the allegations contained in the above paragraphs as if set forth fully herein.

38.     Convatec, as the assignee of the '061 Patent, has the legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

39.     Being duly issued in full compliance with Title 35 of the United States Code, the '061 Patent is valid and enforceable.

40.    HRH has indirectly infringed and continues to indirectly infringe literally and/or under the doctrine of equivalents, one or more claims of the '061 Patent by actively inducing others to make, use, sell, offer for sale and/or import the Accused Products into the United States with knowledge of the '061 Patent, with knowledge that manufacturing the Accused Products directly infringes the '061 Patent, and without authority.

41.    Claim 1 of the '061 Patent recites:

A method of hermetically packaging an intermittent urinary catheter having an insertion end, an insertion end length defining an exterior surface area, a fixture end, and a fixture end length, comprising the steps of:

(a) obtaining a base film having a pocket with a first end and a second end, wherein the pocket is configured to retain the intermittent urinary catheter with the insertion end proximate the first end and the fixture end proximate the second end,

(b) injecting a limited amount of lubricant into the pocket proximate the first end of the pocket so as to form a lubricant containing pocket,

(c) placing the intermittent urinary catheter into the lubricant containing pocket so as to form a catheter containing pocket, with the insertion end of the intermittent urinary catheter proximate the first end and the fixture end of the intermittent urinary catheter proximate the second end,

(d) sealing a cover film to the base film with an unsealed opening proximate the second end of the pocket so as to form an enclosed catheter containing retention chamber accessible through the opening,

(e) drawing a vacuum on the enclosed catheter containing retention chamber through the opening sufficient to compress the retention chamber and cause lubricant to circumferentially flow around and coat a portion of the exterior surface area of the insertion end length of the catheter within the

retention chamber without reaching and coating the fixture end length of the catheter within the retention chamber, and thereafter

(f) sealing the opening so as to form a hermetically packaged intermittent urinary catheter having a circumferentially lubricated insertion end length and a lubricant-free fixture end length.

42.    As depicted in the following photographs, the Accused Products are hermetically packaged intermittent urinary catheters having an insertion end, an insertion end length defining an exterior surface area, a fixture end, and a fixture end length. (*See also* Exhibit C; https://hrurological.com/ready-to-use-catheters/).



43.    The hermetically sealed intermittent catheters have a base film, having a pocket with a first end and a second end. The pocket is also configured to retain the intermittent urinary catheter, with the insertion end proximate the first end and the fixture end proximate the second end.



44.    A limited amount of lubricant is injected into the pocket, proximate the

first end of the pocket so as to form a lubricant-containing pocket.



45.    The intermittent urinary catheter is placed into the lubricant containing

pocket so as to form a catheter containing pocket. The insertion end of the

intermittent urinary catheter is proximate the first end, and the fixture end is

proximate the second end.



46.    Based upon information and belief, the cover film is sealed to the base

film, so that an unsealed opening proximate the second end of the pocket is formed

to enclose the catheter containing retention chamber. A vacuum is then drawn on the

enclosed catheter containing retention chamber through the unsealed opening. The

vacuum compresses the retention chamber and causes lubricant to circumferentially

flow around and coat a portion of the exterior surface area of the insertion end length

of the catheter, but without reaching and coating the fixture end length of the catheter.



47.     The opening is sealed so as to form a hermetically-packaged intermittent urinary catheter, having a circumferentially lubricated insertion end length and a lubricant-free fixture end length.



48.     Based on the facts set forth above, as well as in light of HRH's knowledge of the '061 Patent through the Notice Letters and from face-to-face conversations, HRH's conduct has been willful, wanton, deliberate and objectively reckless, such that Convatec is entitled to treble damages under 35 U.S.C. § 284.

49.     Based on the facts set forth above, at least in light of the Notice Letters, Convatec is entitled to pre-suit damages under 35 U.S.C. § 286.

50.     As a result of HRH's infringement of the '061 Patent, HRH caused and will continue to cause Convatec monetary damages, including but not limited to, reasonable royalties, lost sales and sales opportunities, and/or price erosion.

51.     HRH has also irreparably harmed Convatec. Unless and until enjoined by this Court, HRH will continue such acts of infringement, causing Convatec to incur substantial and irreparable harm for which it has no adequate remedy at law.

## COUNT III
## (TORTIOUS INTERFERENCE WITH A PROSPECTIVE BUSINESS AND CONTRACTUAL RELATIONSHIP)

52.     Convatec incorporates by reference the allegations contained in the above paragraphs as if set forth fully herein.

53.     Convatec enters into contracts for sales of the Covered Products with its customers, with Convatec's customers contractually agreeing to purchase those products for payment of a certain price.

54.     Thus, prospective customers of intermittent catheters like the Covered Products are parties with whom Convatec expects to have business relationships and prospective contractual relations.

55.     Convatec's pursuit of sales to prospective customers will provide economic advantage to Convatec, e.g., increased revenue from sales of the Covered Products.

56.     Given Convatec's position as the only party legally authorized to sell the Covered Products, Convatec has a reasonable expectation of the economic advantage of contracting with customers for the sale of the Covered Products.

57.    HRH has knowledge of Convatec's expectations regarding its prospective business relationships and sales contracts with these customers, particularly as HRH has been, and is currently, a long-standing supplier of lubricant that is sold together with some of Convatec's catheter products.

58.    HRH's sales of the Accused Products in competition with the Covered Products are not privileged, as those sales infringe the Asserted Patents.

59.    As a direct and proximate result of Defendant's tortious interference, Convatec will suffer monetary damages, in an amount to be determined at trial.

## COUNT IV
## (UNFAIR COMPETITION)

60.    Convatec incorporates by reference the allegations contained in the above paragraphs as if set forth fully herein.

61.    By engaging in the unlawful and improper conduct described above, HRH has engaged in unfair competition, with willful, wanton and reckless disregard for Convatec's patent rights.

62.    As a direct result of HRH's unfair competition, Convatec has suffered and/or will continue to suffer substantial, immediate and irreparable harm and damages, in an amount to be determined at trial.

63.    Unless HRH is enjoined from further unfair competition, Convatec will continue to suffer substantial, immediate and irreparable harm and damages.

## **PRAYER FOR RELIEF**

Convatec respectfully requests that this Court enter judgment in its favor and against HRH on Counts I-IV and the following relief:

A.    Damages recoverable in an amount to be determined at trial, pursuant to 35 U.S.C. § 284 and/or the common law;

B.    A permanent injunction enjoining HRH, its parents, subsidiaries, affiliates, divisions, officers, agents, servants, employees, directors, members, partners, representatives, all individuals and entities in active concert and/or participation with it, and all individuals and/or entities within its control from: (i) making, using, offering to sell, selling, and/or importing the Accused Products in the United States; (ii) engaging in infringement of the Asserted Patents by the selling of the Accused Products in the United States; and (iii) requiring HRH to recall and destroy all Accused Products in the United States;

C.    Treble damages for the full period of willful infringement of the Asserted Patents, pursuant to 35 U.S.C. § 284;

D.    A declaration that this case is exceptional and an award of attorneys' fees and costs under 35 U.S.C. § 285 against HRH;

E.    Pre- and post-judgment interest, at the maximum legal rate and costs;

F.    For such other and additional relief, under the Patent Act or otherwise, as this Court deems just and equitable.

## **DEMAND FOR JURY TRIAL**

Convatec demands a trial by jury on all issues so triable on its Complaint.

Dated: November 13, 2024          Respectfully submitted,

BUCHANAN INGERSOLL & ROONEY PC

By: */s/ Andrew J. Koopman*
Andrew J. Koopman (#5288)
Christopher H. Blaszkowski (#5673)
Jeffrey B. Bove (#0998)
500 Delaware Avenue, Suite 720
Wilmington, Delaware 19801
andrew.koopman@bipc.com
christopher.blaszkowski@bipc.com
jeffrey.bove@bipc.com
Tel. (302) 552-4200
Facsimile (302) 552-4295

TAFT, STETTINIUS & HOLLISTER LLP

Ryan O. White
IN I.D. No. 26211-49
*(Pro hac vice forthcoming)*
One Indiana Square, Suite 3500
Indianapolis, IN 46204
Phone: (317) 713-3455
rwhite@taftlaw.com

Philip R. Bautista
OH I.D. No. 0073272
*(Pro hac vice forthcoming)*
200 Public Square, Suite 3500
Cleveland, OH 44114
Phone: (216) 706-3957
PBautista@taftlaw.com

*Attorneys for Plaintiff Convatec, Inc.*